## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF ALASKA

| | |
|---|---|
| **DARREN K. BYLER,** ) | |
| ) | **Case No.:** |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | |
| **UNITED STATES COAST GUARD,** ) | |
| ) | |
| ) | |
| ) | |
| **USCG CGIS AGENT AARON WOODS,** ) | |
| **USCG LT. (RET.) SARA LOVETTE** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| _____) | |

## COMPLAINT FOR DAMAGES

**COMES NOW** the Plaintiff, by and through undersigned counsel, and hereby makes this complaint for

damages, against Defendants United States Coast Guard (USCG), USCG CGIS Agent Aaron Woods,

and USCG (Ret.) Sara Lovette, and states as follows:

## (A). JURISDICTION, PROCEDURAL HISTORY, CHOICE OF JURIST:

**(1). JURISDICTION:** This is a civil complaint for damages under the federal laws and against agents

and agencies of the United States Government (specifically, the United States Coast Guard (hereinafter

"USCG")).  Jurisdiction is proper in Federal Court.  Venue is proper in the District of Alaska because the underlying claims, alleged criminal offenses, corresponding subsequent wrongful convictions, and perjury of agents of the USCG occurred in Alaska, including within this Court Circuit, and the instant cause was previously heard in part by the present Court.  This action is refiled from this Court's Dismissal Without Prejudice, and this Court has continuing jurisdiction over this matter.

**(2).  PROCEDURAL HISTORY:**  The instant cause was previously part of a larger claim, 03: 23-CV-00208-RRB, dismissed as a whole on 08.04.23 by the Honorable Ralph Beistline, Senior United States District Judge.  This portion of the claim was dismissed without prejudice, seemingly having survived Defendants' 12(b)(6) Motion.  See DOC 34 at 9-10 and n.51.  Plaintiff duly re-noticed Defendants of the pending refiling of the instant action.

**(3): CHOICE OF JURIST:**  In the interests of judicial economy, Plaintiff hereby respectfully requests the cause be assigned to the same judge who heard the previous action, to wit:  Hon. Ralph R. Beistline.

## (B).  STATEMENT OF CLAIMS:

**OVERVIEW:**  But for the perjury and numerous material lies told in the 2021 Evidentiary Hearing, Plaintiff's wrongful criminal convictions would have been overturned at best or a new trial would have been granted at the very least.  Plaintiff was wrongfully convicted of two charges, (1) unlawfully discharging and depositing raw sewage into Kodiak waters without a permit (a misdemeanor); and (2) knowingly making materially false statements pertaining to his disposal of raw sewage (a felony).  This conviction and subsequent efforts at post-conviction relief have been caused and hampered, respectively,

by the many lies told by the Defendants herein. In fact, but for these lies, all made under several oaths and directly to the various courts, Plaintiff would not have been convicted of the aforementioned offenses.

The lies employed against Plaintiff were carefully coordinated and planned. Although lies were freely told throughout the case by Defendants, those critical to the convictions center around the M/V Wild Alaskan's 3,500 gallon sewage tank (represented by Defendants as not existing), the denial of the existence of the dedicated Honda (Trash) sewage pump (again, represented by Defendants as not existing), its intake and/or outtake hoses (also represented by Defendants as not existing), the sewage transport bladder, and methodology utilized to offload and legally dispose of sewage ("blackwater" or "greywater"). Additionally, the sewage log Defendants illegally compelled Plaintiff to orally recreate which was the basis of the felony conviction, was neither relevant, nor accurately depicted by Defendants, who lied about the circumstances compelling its recitation and altered and tampered with evidence, and subsequently lied about all of it.

As the direct, proximate, and foreseeable result of Defendant's perjury and lies, Plaintiff has lost his ability to work in his lifelong chosen avocations of professional fisherman, professional fishing guide, and professional hunting guide. The felony conviction precludes firearms ownership, thus destroying Plaintiff's ability as a hunting guide. He is unemployable as a ship's captain with the felony conviction involving the legally unnecessary alleged sewage log discrepancy he was forced to recreate from memory. Rather, Plaintiff now ekes out a miserable existence as an over-the-road commercial cargo hauler, AKA "trucker."

Plaintiff's reputation has been destroyed by the lies, which make him out to be a dishonest feces-dumper. Nothing could be further from the truth, as evidence will prove he was known to be perhaps "The only guy in Kodiak dumping sewage legally." See the two videos of the Kodiak Harbormaster, Lon White, stating this fact directly to Defendant Woods, pending to-be conventionally filed **VIDEO EXHIBITS 2 and 3**. This direct eyewitness testimony of numerous legal sewage offloading events was not only ignored by Woods; he lied about it and stated the contrary as the truth, having himself witnessed nothing. Defendants admitted in various courts that no sewage alleged dumped by Plaintiff was ever found, even after extensive microscopic sampling via a USCG submersible. Nonetheless, the case against Plaintiff proceeded, and Plaintiff was wrongfully convicted against the weight of the evidence, as mentioned, *supra*. Thus, every representation by the prosecution and the Defendants of illegal sewage dumping in the criminal case was knowingly falsely made and solely intended to harm and wrongfully convict the Plaintiff.

As the foreseeable, direct, and proximate result of the outrageous campaign of perjury, lies, and/or evidence tampering told by the Defendants, Plaintiff has suffered intense and chronic emotional distress, which continues to affect him every day of his life.

## SUPPORTING FACTS:

**Plaintiff herein enumerates Defendants' multiple harmful lies and misdeeds, which comprise some, but not all of those relevant to the case. Defendants' harmful actions include, but are not limited to: Lying, perjury, tampering with and spoliating evidence, and conspiracy, as well as FRAUD ON THE COURTS:**

1.  Federal Coast Guard Agent Aaron W. Woods  lied to the Federal Court about not altering and

    spoliating evidence in this case:  After filing formal complaints with CGIS, the FBI, and the DOJ

    (**See EXHIBIT 1 10-2-2016 Letter to USCG Randall Thompson, EXHIBIT 2 3-20-2017**

    **Email to AUSA Kyle Reardon and EXHIBIT 6 4-4-2016 Letter to FBI**), Agent Woods

    falsely claimed in the 2021 Evidentiary Hearing that Plaintiff's complaints of fraud had been

    investigated by his supervisors, which is the furthest thing from the truth.  Note with the

    existence of the Red Honda Trash Pump, the Coast Guard had no case against Mr. Byler.  On

    page 67 of the 2021 Evidentiary Hearing, Agent Woods lied about not knowing Darren Byler

    had a trash pump stored in the "fiddley" of the M/V Wild Alaskan.  See **EXHIBIT 3 P67**

    **Woods Testimony Evidentiary Hearing-Pump in the fiddley**


    This is the exact reason why Agent Woods deleted the photos of the sewage pump from the

    search warrant photos; lied to a grand jury; lied in the Federal Trial; and ultimately lied in the

    2021 Evidentiary Hearing regarding details associated with the Red Honda Trash Pump and the

    alleged non-transfer of sewage from the 110' M/V Wild Alaskan.  This lie was critical to Woods

    as he could not make out his false criminal prosecution of Plaintiff without it.


    In fact, **EXHIBIT Z001 – RED HONDA SEWAGE PUMP RECEIPT 4-30-2014**, for the

    Honda Sewage pump which was employed for lawful sewage removal from the 3,500 gallon

    sewage tank of the Wild Alaskan, was furnished to the prosecution in the criminal case.  They

    were provided with their own hard copy of same.  Nonetheless, both the prosecutor and

    Defendants, under oath, continually claimed that no such pump ever existed, despite the latter

    opening the unlockable door to the fiddley, viewing the red Honda sewage pump, taking pictures

of it, then closing the fiddley door. They claimed the fiddley was locked both from the outside and from within, and that there was no access to the fiddley. In fact, the fiddley door had no rear access, See **EXHIBIT Z003 -- INTERIOR FIDDLEY, NO INTERIOR DOOR**, could not be locked from the inside as there was no access from the boat interior and the door could not lock, See **EXHIBIT Z002 – INTERIOR FIDLEY DOOR HAS NO LOCKING MECHANISM**, and had no locking mechanism of any kind on its exterior. See **EXHIBIT Z004 -- FIDDLEY DOOR EXTERIOR CANNOT LOCK**, and **EXHIBIT DE-0129 – RED HONDA SEWAGE PUMP SITTING IN THE FIDDLEY**. If there had been a problem opening the fiddley, Woods could have simply forced the door pursuant to the warrant, or retrieved Darren Byler from Woods' own truck in the Dog Bay parking lot, where Woods held defendant for hours during the search. In fact, Woods boldly perjured himself repeatedly by stating, incredibly, that had he wanted to enter the fiddley (which had no locking mechanism of any kind), he would have had to employ a steel-cutting torch to cut his way in. See **EXHIBIT DE-00116 – BYLER OPENS FIDDLEY DOOR, NO LOCKS**, of Plaintiff simply opening the door by hand, since it could not be locked in any way.

The very existence of this receipt, coupled with video evidence (pending to-be conventionally filed exhibit **VIDEO 1**) demonstrating the use of the pump for sewage removal from the M/V Wild Alaskan, and the existence of the 3,500 gallon waste tank itself, Defendants falsely testified did not exist, destroys the foundation of the wrongful criminal case, and proves numerous lies were employed by Defendants to perjure themselves in the Courts and intentionally and knowingly harm Plaintiff. Defendants made the error of photographing the Sewage pump green intake hose that ran from the sewage tank to the intake of the red Honda sewage pump.

Additionally, the photo shows the collapsible blue sewage discharge hose. These hoses were purchased on the same date as the Red Honda sewage pump itself, and are listed first on the receipt for same. See **EXHIBIT Z001 – RED HONDA SEWAGE PUMP RECEIPT 4-30-2014**. Since the hoses were filthy with sewage from their designated use, they were always stored with the sewage pump in the fiddley. After the USCG opened the fiddley, they removed the hoses and laid them on the deck. They then took photographs of the hoses. This error of the Defendants proves the existence and presence of the two sewage hoses. Defendants missed destroying this photograph, as they did those they took of the red Honda sewage pump, which also proves that they had ready access to the fiddley, the pump, and the tank. Nonetheless, they lied about everything. These are the very same hoses that Woods declared with utmost certainty and conviction, under oath, did not exist. Since the USCG, and perhaps Woods himself, removed them from the fiddley and placed them in plain view on the deck, clearly visible in their own photos, there is no way Woods could have made this statement in good faith. It was a bold-faced lie. This and other lies were repeatedly parroted by DOJ in their libelous press releases issued to media and the public. See **EXHIBIT DE-0044 GREEN AND BLUE SEWAGE PUMP HOSES**, comprised of the USCG's own photograph furnished by them to Plaintiff, which clearly shows the green sewage intake hose and blue discharge hose they removed from the pump in the fiddley, and laid out on the deck. They remained there when they left. These facts did not prevent Woods from boldly perjuring himself by stating that there were no hoses found aboard through which sewage could have been pumped. See also, **VIDEO 1** of the green intake hose and a third discharge hose hooked to the red Honda sewage pump, in action. Hoses appear clearly in the photograph they forgot to destroy, and foolishly furnished to the plaintiff. Presumably, they did not seize the hoses due to contamination by sewage moving through them

and malodorous residue remaining, the very thing they testified was fantasy and never happened, whilst fully knowing they were lying.

2. Agent Woods blatantly lied about not tampering with evidence on page 179 of the 2021 Evidentiary Hearing Transcript. See **EXHIBIT 4 P179 Woods Testimony Evidentiary Hearing-Never Tamper with Evidence**

> Q: And of course, you have never tampered with evidence, have you?
>
> Woods: No.

(Photos of the December 2015 boat raid of the Wild Alaskan have conflicting properties; if photos were "originals", there would not be evidence of different creation dates and evidence of a Microsoft program which is inconsistent with an ORIGINAL DOWNLOAD from a Nikon Coolpix camera directly to Agent Woods' computer.)

3. Agent Woods lied in the 2021 hearing regarding details of his "clean" personnel file: Undeniable evidence exists proving the government withheld many felony fraud complaints against Woods and kept them from his personnel file. See **EXHIBIT 7 P207, 55-56 Woods Testimony Evidentiary Hearing-Personnel File**

4. Agent Aaron W. Woods and (Ret.) Lt. Sarah Ann Lovette were both involved in the illegitimate request of the Coast Guard Long Island boarding for the sole purpose of illegally collecting and providing false information in a search warrant application, grand jury indictment testimony, federal trial and ultimately the 2021 Evidentiary Hearing in which their false narrative continued. The 2014 boarding by the Coast Guard Cutter Long Island was designed to strengthen their case against Plaintiff, as they conspired to provide fraudulent reports associated with the Long Island

boarding.  In all cases listed above, both Woods and Lovette falsely claimed that the Long Island boarding was nothing more than "routine", which was a complete lie to the Court, as Coast Guard Commander Kalen Kenny's sworn testimony and **EXHIBIT 16 7-16-2014 Fuller Email Long Island Boarding Summary** are in direct conflict with the many false statements of Woods and Lovette given in the 2021 Evidentiary Hearing.

Below are additional details with supporting exhibits that both Federal Agent Aaron W. Woods and MSD Officer (Ret.) Lt. Sarah Lovette both told a Federal Judge in the 2021 Evidentiary Hearing with the sole intent to uphold Plaintiff's illegitimate felony conviction.

Agent Aaron Woods and Lt. Sara Lovette communicated, colluded, and conspired to shut down Darren Byler's Entertainment Charter of 2014 before it even opened on June 25, 2014.  The evidence produced through exhibits which included emails, action reports, boarding reports, audio recordings and sworn testimony from witnesses strongly support Plaintiff's beliefs and assertions.  The actions in this case perpetrated upon Plaintiff and his new business were in direct violation of a significant amount of Federal Case Law, Federal CFR's and the US Coast Guard Commandant's Instruction manual that will be highlighted below.

Just three days after the new business opened, Woods and Lovette devised a plan to shut down both of Plaintiff's vessels at the same time for an alleged overloaded water taxi so that Agent Woods could start a "self-initiated" criminal investigation.  This is exactly why both Lovette and Woods testified in the 2021 Evidentiary Hearing that they "could not recall" Agent Woods being present at the shutdown which was a major event at midnight on June 27, 2014 in Kodiak, Alaska.

We now know that Agent Woods was present that evening as in the audio tape produced at the hearing in **EXHIBIT 10053 Lovette2** at 12min 45 secs into the interview Agent Woods and Lt. Lovette are both caught on tape talking about Agent Woods presence there that evening to another Federal Agent in the interview. The actions of both Woods and Lovette claiming that they both "did not recall" Woods being there that evening would suggest that they both discussed this event sometime before the hearing and attempted to mislead the Court in the 2021 Evidentiary Hearing by both of their selective memory issues as well as their perjurious statements to the Court.

Agent Woods' Action Report in **EXHIBIT 14 Action Report ACT-2014-07-000702** also documents the fact that Woods received a request for assistance from Lt. Sara Lovette's MSD Office at 7 PM that evening. While examining Agent Woods under oath Plaintiff asked him at least two different times how it was possible for him to receive a call for assistance for an event that did not take place until five (5) hours later. Agent Woods did not have an answer for this simple question.

The entire event of July 27, 2014 was a completely fabricated event perpetrated upon Plaintiff's business by Agent Woods and Lt. Lovette as there was not even a warning issue given for the alleged overloaded water taxi, because the water taxi was not overloaded in the first place. Lt. Lovette then used this false allegation of the overloaded water taxi as a means to shut down the Wild Alaskan because the life rafts and EPIRB had expired. 46CFR25.25-17(b) clearly establishes that the Plaintiff did not even need life rafts as they operated inside the 3-mile limit, whilst additionally having plenty of auxiliary vessels tied up around the Wild Alaskan to take the place of rafts that evening. They also did not by law need an EPIRB as they were inside the 3-mile limit that evening. See 46CFR25.26-10. Lt. Lovette was fully aware of this fact as Plaintiff had discussed in detail with her in his first encounter before the shutdown

that he did not need a life raft or EPIRB to operate inside the 3-mile limit as he had plenty of auxiliary vessels to take the place of a life raft.

In order for Plaintiff's business to re-open at this point after the pre-planned and fraudulent shutdown of June 27, 2014, they were requested by Lt. Lovette on June 30, 2014, just three days later, to provide a Crew List to the MSD Office as **EXHIBIT 18(b) 6-30-2014 Lovette Email requesting crew list** documents. Lt. Lovette wrote in this email "Additionally, a list of crew members with names, date of birth... will need to be sent over to MSD Kodiak prior to operating". Just three days later, Agent Woods documented in **EXHIBIT 13 Action Report ACT-2014-07-000741** Action Report that he received the Crew Roster from the MSD Office. Agent Woods then testified once again that he could not "recall" if Lt. Lovette was the person from the MSD Office that sent over the Crew Roster. As **EXHIBIT 13 Action Report ACT-2014-07-000741** also documents, Agent Woods immediately turned over the Crew Roster to the FBI for "analysis". At no time during the original trial or this Evidentiary Hearing did the Government provide one shred of documentation that this type of collection of evidence was remotely legal, because it was not. In the Hearing, both Lovette and Woods in essence testified that this type of collection of evidence was routinely done all the time with other vessels, there was nothing to see here, and let's move on now, which was nothing more than false statements with no documentation to back it up.

Next, the Coast Guard Cutter Long Island Boarding of July 15, 2014, just two weeks after the last shutdown of June 27, 2014 of both vessels for the alleged overloaded water taxi:
It strains credulity that Agent Woods and Lt. Lovette thought that they could convince the Court by both testifying under oath that this was just a "routine boarding". As **EXHIBIT 16 7-16-2014 Fuller Email**

**Long Island Boarding Summary** clearly documents, the Boarding was a planned "joint sector" between the Long Island, Lt. Lovette's MSD Office, and the Cutter Alex Hailey. The ill-gotten information from the Boarding was passed on to the Coast Guard's "INTEL Division" as well as the report being shared with 15 high-ranking Coast Guard Officials.

Lt. Lovette and Agent Woods were both contacted in advance the day before the Boarding of the Wild Alaskan by the Long Island's Captain, Commander Kenny, as Commander Kenny testified in this hearing to this fact. Of course, Agent Woods testified he did not "recall" being contacted in advance by Commander Kenny, as once again his recollection to the facts in this case would expose his pre-planned actions against the Plaintiff. This Court should highly scrutinize the credibility of Agent Woods as to the number of times Agent Woods cannot recall major events. Federal Agents are trained to maintain razor sharp memories for their investigation tactics, especially to remember and document major events in any case.

Lt. Lovette also did her best to mislead the Court as to the real purpose of the Long Island Boarding. As the Court now knows, she was actually physically present on the Bridge of the Long Island during the boarding. Lt. Lovette falsely testified under oath in the first trial, See **EXHIBIT 17 P53 Lovette 2015 Criminal Trial Testimony** page 53 of Lovette's trial transcript, where Lt. Lovette claims she does not know why the vessel was boarded, that she was not "connected" at all with the boarding, had not asked through the MSD for the Boarding to happen, and shamefully tried to mislead the Court by classifying this type of boarding as "random". After the July 15, 2014 Boarding of the Wild Alaskan, once again in just a two-week time period, Agent Woods collected a Crew List from the fruits of the "routine" Long Island boarding and immediately turned them over to the FBI. We now know this to be true from

Commander Kenny's testimony that he himself turned over the Crew List to Agent Aaron Woods. And of course, this is after the Long Island Boarding Crew both lied to Plaintiff and his wife about not being under Criminal Investigation after being asked this simple question when the boarding started.

Agent Woods then falsely reported in **EXHIBIT 5 Charging Documents from Woods** first page number 18, on a search warrant application that the July 15, 2014 boarding by the Cutter Long Island was a "routine boarding". At this point in the investigation is where Agent Woods' calculated fraud upon the Plaintiff starts to accelerate. After receiving the report from the Long Island that the MSD (Sewage Tank) was "fine and rigged to keep all sewage onboard" and confirmation from the FBI on two separate occasions that the Entertainers on board were not wanted felons with arrest warrants or victims of "human trafficking of enslaved prostitutes", Woods was forced to change plans and go after Plaintiff for other imaginary issues that he had concocted to justify his self-serving investigation.

**EXHIBIT 62 ABC Attempted Undercover Sting by CGIS Woods-ABC-KPD-FBI-AST** documents that on 9-19-2014 Agent Aaron Woods was squarely involved in an undercover plan to take down Plaintiff's business with two undercover ABC Agents. The two undercovers came out to the boat that evening and solicited any illegal activity they could find. Agent Woods was the architect of this plan to assemble multiple law enforcement agencies as well as a State of Alaska Prosecutor to be involved in the attempted sting of the vessel. Agent Woods lost all credibility with other law enforcement officials after not finding any illegal activities had taken place on the vessel as per his wild and irresponsible claims against Plaintiff. This includes the embarrassment and the egg on the faces of all involved after the undercovers spent $1,000.00 in cash of Kodiak Taxpayer Dollars that evening on Wild Alaskan Lap Dances. At this point in this case, just as others have filed the same type of complaints against Agent

Woods for fraud and misconduct issues, Agent Woods started to take this case personally as he had now demonstrated he would do just about anything regardless of the legality to create a felony charge and conviction of Plaintiff, with the sole intent put both Mr. Byler and his wife Kimberly, in Federal Prison.

As Agent Woods testified in the 2021 Evidentiary Hearing, he had full knowledge that the Entertainment Charter was getting ready to close for the winter in November of 2014. Agent Woods was running out of time to create and generate a felony against the Bylers. So, on October 29, 2014, Agent Woods came up with a plan to collect sewage disposal information solely to be used against Plaintiff in a Criminal Investigation through the backdoor of Lt. Sara Lovette's MSD Office Administrative Arm. See **EXHIBIT 10 Action Report ACT-2014-10-006244**

Ironically, on the exact same day of October 29, 2014, after contacting Lt. Lovette of the MSD Office requesting sewage disposal receipts, Lt. Lovette emailed Kimberly Byler, requesting sewage receipts to "keep you guys up to date" and "keep you guys clear this week". See **EXHIBIT 11 10-29-2014 Lovette Email to Kimberly**. After reluctantly complying with Lovette's request and Lovette's previous demands of a sewage log, Lt. Lovette eagerly turned over the ill-gotten information to Criminal Investigator Agent Aaron Woods. Agent Woods then used fruit of the poisonous tree to help obtain a search warrant of the vessel. These actions are in direct violation of a plethora of Federal Case Law, including the Commandants Instruction Manual D. "Transfer of evidence between civil and criminal cases". Agent Woods was using Lt. Lovette to collect evidence for the "sole purpose of furthering a Criminal Investigation". This included the two previous times he collected names of crew members (Entertainers) and turned them over to the FBI with the help of Lt. Lovette. In fact, at this point in the Fall of 2014, Lt. Lovette had stated to other Coast Guard Officials in **EXHIBIT 21 11-5-2014 Email to Cintron USCG** "At this time there is no Coast Guard action pending with said vessel." She made this

statement to Coast Guard Officials. Plaintiff had proven in the 2021 Evidentiary Hearing that she had been secretly funneling information to Agent Woods that had been requested by Woods to be provided from her MSD Office to satisfy Agent Woods' illegal request.

Lt. Lovette knew in advance that she had no legal right whatsoever to request an uninspected 12-Pak vessel such as the Wild Alaskan to keep or produce sewage logs or receipts in the first place. This was apparent in Lt. Lovette's original testimony in the December 2015 trial against Mr. Byler:

Question: "So really it is a suggestion (maintaining sewage records) and not a command, correct?"
Answer: Correct"
Question: "So you do not have the authority to produce a sewage log, do you?"
Answer: "A sewage log, no."

From Lt. Lovette's original testimony under oath in the first trial, Lt. Lovette changed her story and testimony in the Evidentiary Hearing of 2021, and stated that she now had the authority to collect such documents. During this past Hearing, the Prosecution attempted to justify Lt. Lovette's actions of demanding Mr. Byler's sewage documents by flippantly referring to CFR's that have absolutely nothing to do with Lovette's ability to legally expect Plaintiff to keep or produce sewage documents. With no exhibits to back it up, Lt. Lovette recently testified at the Evidentiary Hearing that she had this authority under 46CFR25.50. In Part 25.50 in **EXHIBIT 68 CFR Subpart 25.50 Garbage Retention** proves this CFR is nothing more than a Garbage Retention Waste Management Plan that has nothing to do with sewage. Lt. Lovette also falsely testified she had this authority under 33CFRPart 6. Federal CFR **EXHIBIT 69 Title 33 Part 6 Protection and Security of Vessels, Harbors and Waterfront Facilities** which also details "protection and security of vessels, harbors and waterfront facilities" which again has

absolutely nothing to do with Lt. Lovette having the legal authority to expect Mr. Byler to keep or produce a sewage log or receipt.  In fact, in **EXHIBIT 68 CFR Subpart 25.50 Garbage Retention** under "who must comply" with sewage and graywater discharge records, this Coast Guard Document clearly states that Owner/Operators and Masters of Vessels authorized to carry five hundred (500) or more passengers that operate in Alaskan Waters are the ONLY vessels that must comply.  The M/V Wild Alaskan had a capacity of twelve (12) passengers.

In **EXHIBIT 19 33CFR Chapter 1**, 33CFR159.313 "Inspection for compliance and enforcement" (b) of sewage discharge record books required to be certified by the Master and in 159.315(e) must be signed and dated by the Master or other persons having charge of the ship.  Of course, none of these CFR's were expected of Plaintiff in this case, as Lt. Lovette knew in advance that Plaintiff did not qualify for these expectations by the Coast Guard as an Uninspected 12 Pak Vessel.  Yet she falsely testified in the trial that this detailed information could have been written on a piece of toilet paper.

## SUMMARY OF COAST GUARD COMMANDER KALEN KENNY'S TESTIMONY

Commander Kenny, from the Coast Guard Cutter 'Long Island', testified that he was contacted by Sector Anchorage the day before the Boarding started.  Kenny testified that the day before the boarding started, he spoke to Agent Woods and Lt. Lovette both over the phone, at the same time.  Kenny testified that Lt. Lovette requested the Boarding to happen.  Commander Kenny testified that he positioned the Cutter Long Island 200 yards away from the Wild Alaskan.  Commander Kenny testified that he collected and turned over names of the crew to Federal Agent Aaron Woods.

In **EXHIBIT 15 P21 Commander Kenny Evidentiary Hearing Testimony Transcript** from the December 17, 2021 Evidentiary Hearing transcript starting at line 11, Commander Kenny testifies that

Case 3:23-cv-00281-HRH   Document 1   Filed 12/15/23   Page 16 of 39

"the big reason that they were going was because like I said the verbal aggression that had been experienced by MSD before that. They were uncomfortable on doing any follow-up on the remaining discrepancies of things that are needed for the vessel to be safely underway. And so, they asked for the boarding team to do it." The statements made on Page 21 of the hearing transcript by Commander Kenny are extremely important as they would suggest that Lt. Lovette and Agent Woods falsely reported details to Coast Guard Officials for the sole purpose of receiving another bite at the apple with yet another Coast Guard Boarding to collect a crew roster to be sent to the FBI.

In **EXHIBIT 17 P53 Lovette 2015 Criminal Trial Testimony** on page 53 of the 2015 Trial Testimony from Lt. Lovette, she denied under oath that she did not know why the vessel was boarded. She denied under oath that the boarding was connected with her. Further, she stated under oath that her MSD Office did not request this boarding to happen. As outlined in Commander Kenny's sworn testimony above from **EXHIBIT 15 P21 Commander Kenny Evidentiary Hearing Testimony Transcript** of the Hearing Transcripts, Lt. Lovette's statements were completely perjurious regarding a material issue in this case.

Kenny also testified in **EXHIBIT 15 P21 Commander Kenny Evidentiary Hearing Testimony Transcript** of the Hearing Transcript, that he was told that there was "verbal aggression" involved that had been experienced by the MSD before that, and that the MSD was uncomfortable doing any follow-up on the remaining discrepancies for things that needed to be done for the vessel to be safely underway. All allegations of Plaintiff being involved in any verbal aggression interactions with Sara Lovette's MSD was completely fabricated by Lt. Lovette. As **EXHIBIT 16 7-16-2014 Kenny Email Long Island Boarding Summary** clearly documents, Plaintiff's behavior whilst interacting with Coast Guard

Officials during a boarding was described on page 2, paragraph 3, as "no tempers were lost and Mr. Byler was very friendly, shaking the boarding officer's hand and thanking him for his service at the end of the boarding." All of the remaining alleged "discrepancies" of things that needed to be fixed before the vessel could be cleared, had already been cleared by June 30 by the Captain of the Port, as Sara Lovette's email of June 30, 2014 in **EXHIBIT 12 6-30-2014 Lovette Email to Kimberly** clearly proves.

The reason that this portion of Commander Kenny's testimony is so important in this case is that it would highly suggest that Agent Woods and Lt. Lovette requested yet another Coast Guard boarding, this time while feeding the Cutter Commander, Kenny false information to justify their boarding request, such as the false allegation of Mr. Byler being verbally aggressive. (Note: There is absolutely no documentation of this in any of Agent Woods detailed action reports.) Add to this the false allegation that the Coast Guard Cutter Long Island had any remaining discrepancies to clear before the vessel could safely get underway. Commander Kenny also testified that he was told by Agent Woods, that Agent Woods needed to be there in case there was any "increased aggression", yet Agent Woods secretly hid himself from the boarding while remaining and watching the boarding from the beach. Of course, this makes no sense, because if there was a real threat of aggression, which there was not, and Woods was claiming he was involved for this reason, Woods would have been physically present for the boarding and not hiding behind a bush on the beach in the Kodiak Channel.

The evidence from Kenny's testimony clearly suggests this was an illegal search and seizure to collect documents from the vessel and then immediately hand them over to Agent Woods for a Criminal Investigation and FBI Analysis. The request by Lovette for the Cutter Long Island to be there was once

again the end result of collecting a crew list while inspecting the vessel should be considered by this Court collecting evidence for the sole purpose of a Criminal Investigation. At this time, the M/V Wild Alaskan had been CLEARED by the Captain of the Port from the alleged overloaded water taxi shutdown. Nevertheless, Plaintiff was forced to purchase $10,000 worth of new life rafts and a new EPIRB that by law they did not need. Further, Lt. Lovette had no paralleling administrative investigation of the Bylers going on at all from June 30, 2014 onward, as the Government had not provided one shred of evidence to prove a "paralleling" investigation of anything by Lovette's MSD Office.

Commander Kenny also testified that the MSD was "fine and rigged to keep all sewage on board". Commander Kenny confirmed under oath that the sewage tank was inspected by the boarding crew.

**EXHIBIT 16 7-16-2014 Kenny Email Long Island Boarding Summary**

## SUMMARY OF (Ret.) LT. SARAH ANN LOVETTE'S TESTIMONY

As the stated facts above exist on the record from the 2021 Evidentiary Hearing, (Ret.) Lt. Sarah Ann Lovette started off testifying that she did not "recall" contacting Agent Woods for Assistance for the elaborate June 27, 2014 shutdown of the Wild Alaskan and Gulf Coast Responder (Water Taxi). We now know that her office did in fact request Woods' assistance because of Woods' Action Report in **EXHIBIT 14 Action Report ACT-2014-07-000702** and the Audio Tape of **EXHIBIT 10053 Lovette2** at time stamp 12min45secs, in which Lt. Lovette explained to a Federal Agent that she and Agent Woods were physically present that night as the passengers of the water taxi were approaching the water dock parking lot.

Lt. Lovette tripled down on her deficient recall abilities that she did not "recall" Agent Woods being there that night and she could not "confirm" that Woods was there. At one point in her testimony, incredibly, Lovette stated that she wasn't even sure if SHE HERSELF was there that night. The reason Lt. Lovette's memory of this event was significantly hampered is it would be obvious that this is where Woods and Lovette collusion against Mr. Byler began. For Lt. Lovette and Agent Woods to both admit that they were there that evening would be obvious that this was the start of their careful and deliberate plan to shut down the Entertainment Charter and put Darren and Kimberly Byler in Federal Prison.

We also now know that Lt. Lovette while still employed by the US Coast Guard was soliciting the job of the Kodiak Harbormaster through an email **EXHIBIT 22 3-19-2021 Email to City re Harbormaster Job by Lovette** to Kodiak City Manager Aimee Kniaziowski. This would explain why Lt. Lovette would put her credibility and her Coast Guard career on the line to illegally collect evidence for Agent Woods in a Criminal Investigation, as she tried to gain favor from the City of Kodiak by putting me out of business.

Lt. Lovette went on to testify under oath that she did not send her underling MSD Officers down to the water dock the evening of July 27, 2014 to put Plaintiff under surveillance. This blatant perjury in the 2021 Evidentiary Hearing is directly contradicted on the audio tape of **EXHIBIT 10053 Lovette2** at 12min45secs time stamp and in **EXHIBIT 51 7-1-2014 Woods Email to Lovette**.

Lt. Lovette testified that the Water Taxi was overloaded that night and after a major shutdown of the vessel, only a warning was issued regarding the alleged overloaded water taxi. Despite this, there was

not one shred of evidence submitted in the Evidentiary Hearing that any documentation regarding this tall tale of an overloaded water taxi or any kind of "warning" issued by Lovette. Next, Lt. Lovette testified under oath that the State of Alaska ABC Liquor License Hearing that she testified in was just a casual phone call. Lovette testified she was not put under oath and she testified she was not cross examined by Mr. Byler. Lovette also testified that this was not in any way a formal hearing. Please review **EXHIBIT 10051 Sara Lovette ABC Hearing Anonymous Overloaded Water Taxi** complete audio tape of Lt. Lovette's testimony in the ABC Hearing as she was the star witness against Mr. Byler with the intent for the ABC Liquor Board to strip Plaintiff's alcohol license for safely serving alcohol on anchor, just as the cruise ships do with the same common carrier liquor license. The audio tape proves that Lt. Lovette was put under oath by Judge Polly. The audio tape proves that Mr. Byler cross examined her personally. The audio tape proves she committed perjury under oath to Judge Polly regarding the overloaded water taxi that she testified she found out about through anonymous sources. As we now know, the so-called "anonymous source" that reported the overloaded water taxi was her very own MSD Crew of Wierda and Olaf. The statements made under oath by Lovette completely contradict **EXHIBIT 10053 Lovette2** Interview at 12min45secs where she told two Federal Agents that she sent two of her own crew down that night to surveil us. Incredibly, even after listening to the audio tape that was played by Mr. Byler in the 2021 Evidentiary Hearing to impeach the Lieutenant that she obviously did not know Mr. Byler had, Lt. Lovette still claimed under oath that she "did not recall" this happening.

Lt. Lovette then falsely testified that the Cutter Long Island Boarding was not an "Intel Operation" even though **EXHIBIT 16 7-16-2014 Kenny Email Long Island Boarding Summary** and Commander Kenny's testimony completely contradicts her statement. Lovette also testified regarding this subject that she did not know why Woods was cc'd (copied) on the Long Island Report. This false statement

also contradicts Kenny's testimony that Woods and Lovette were both called at the same time the day before the boarding started. Lt. Lovette than brazenly testified that the Long Island Boarding was "not any different than any other routine boarding". We now know that this statement made under oath is absolutely not true. See **EXHIBIT 16 7-16-2014 Kenny Email Long Island Boarding Summary** Lovette then testified that she did not know why the Long Island boarded the Wild Alaskan and that she did not "recall" Sector Anchorage giving her a call-in advance that the Long Island was on its way to Kodiak. These false statements by Lovette outline her questionably legitimate "recall" abilities by a Lieutenant in the United States Coast Guard.

Lt. Lovette tried to bamboozle the 2021 Evidentiary Hearing court to believe that she magically appeared on the bridge of the Cutter Long Island without any advance warning that the vessel was coming. Lt. Lovette testified under oath that the Wild Alaskan was boarded without her "notification". This statement completely contradicts Commander Kenny's sworn testimony and **EXHIBIT 16 7-16-2014 Kenny Email Long Island Boarding Summary**. Lt. Lovette falsely claimed that she was not connected to the boarding and we now know that this statement was completely false. Lt. Lovette went on to testify under oath that she "did not recall" giving the crew roster to Agent Woods after the June 27, 2014 shutdown. **EXHIBIT 12 6-30-2014 Lovette Email to Kimberly** documents Lt. Lovette requesting the Crew Roster and **EXHIBIT 13 Action Report ACT-2014-07-000741** documents an Action Report that Agent Woods received the Crew Roster from Lovette's MSD Office just three days after requesting. Further, **EXHIBIT 51 7-1-2014 Woods Email to Lovette** proves that Kimberly Byler, under duress, conceded to Lovette's request to provide the roster in the first place. Lt. Lovette went on to testify under oath that she "did not recall" Kimberly Byler or Darren Byler asking her if they were under Criminal Investigation. Lt. Lovette then testified that she would be surprised that there was

no law that required them to provide a crew roster. This statement was made without one shred of

evidence provided by the prosecution or Exhibits documenting the fact that Lt. Lovette had the authority

to request a crew roster and secretly turn it over to a Federal Criminal Investigator without the Byler's

knowledge. The reason this document was not provided in the 2021 Evidentiary Hearing is for the

simple fact that it does not exist.

Lt. Lovette then testified that she did not know why Agent Woods did not request the sewage receipts

from the Bylers himself. Of course, this answer is quite frankly laughable and this Court should not take

this answer seriously. Lt. Lovette then falsely testified that she could have requested sewage receipts

under 33CFRPart6 and 46CFR25.50. As I have already covered *supra*, this false assertion in **Exhibit 68**

**CFR Subpart 25.50 Garbage Retention and Exhibit 69 Title 33 Part 6 Protection and Security of**

**Vessels, Harbors and Waterfront Facilities**, Lovette completely changed her story from her testimony

in the first trial. In fact, Lt. Lovette even testified that she could not "recall" testifying in the first trial

that she could not legally collect sewage information from the Wild Alaskan. The Lieutenant then

doubled down on her false assertion that the sewage log provided by Mr. Byler once again, could have

been written on a piece of toilet paper. This false statement is clearly contradicted in **EXHIBIT 19**

**33CFR Chapter 1** 33CFR159.315 (Sewage and Graywater Discharge Record book).

Lt. Lovette falsely testified under oath that Mr. Byler was not present during the January 5, 2015

meeting in her office with Agent Woods, when all three of them looked at the ships drawings together,

that proved the existence of the 3,500 gallon sewage tank they would both later see in person, then lie

under oath and claim didn't exist. See EXHIBIT XX Additionally, some unknown agent, presumably the

USCG, Woods, or Lovette, tampered with evidence and altered the audio tape of said meeting. They

removed Lovette's explosion and screaming at Byler that Byler would never get her emails exchanged with Woods, because they were government property. The tape has been edited to remove this exchange. **EXHIBIT 54 Audio Transcript of Woods-Lovette-Byler Meeting 1-5-2015** documents that Mr. Byler was physically present at that meeting. See **EXHIBIT 55 P136-137 Lovette Evidentiary Testimony Denying 1-5-2015 Woods-Lovette-Byler meeting over ship drawings.** See **EXHIBIT 11 10-29-2014 Lovette Email to Kimberly,** which contain the threat made to Byler. See also Byler's email of 07.10.15, in which he notified his then-attorney that he knew Defendants altered and tampered with the evidence to hide Lovette's explosion. It even noted the point of sloppy editing by timestamp. Byler never received any reply to this demand for the original, unaltered evidence. This contemporaneous documentation of the alteration of the evidence is compelling.

Lt. Lovette testified under oath that she "did not recall" making negative Facebook posts about the Bylers but now we know that she did as Mr. Byler presented evidence of the negative, shameful, and degrading posts against Mr. Byler and his business on the Big Screen during the Evidentiary Hearing. This included an egregious post made by Lt. Lovette just hours after testifying against Mr. Byler in the Federal Trial, while the trial continued, where she went back to her hotel room after testifying that she had nothing against the Bylers to a Federal Jury, yet wrote: "I hope that Damn Owner goes down and gets what he deserves". Of course, the Jury in Byler's trial was not sequestered and it is no secret that Juries snoop on the internet during ongoing trials, even though they are instructed not to do so, and a disparaging, degrading public Facebook post such as this by Lt. Lovette with a photo of herself in her Coast Guard uniform taken at her office at the Kodiak Marine Safety Detachment should be considered motive and malicious intent to directly harm Mr. Byler. See **Exhibit 23 LOVETTE 2015 FACEBOOK POSTS**

Lovette went on to testify that she collected sewage information from other vessels as well and she gave two examples of the Pacific Producer and the Tempest. This statement under oath was an attempt to mislead the Court into thinking that Mr. Byler's 12-pak uninspected vessel had the same rules and regulations as both floating Processors that carry a crew of at least 50 people each and have a completely different set of Coast Guard rules than the Uninspected 12-pak M/V Wild Alaskan.

## SUMMARY OF AGENT AARON W. WOODS'S TESTIMONY

As a Federal CGIS Agent it would appear in this case that Agent Aaron W. Woods had been running his own rogue type of investigation tactics where Federal Laws in the Commandants Instruction did not apply to him. In the Coast Guard Commandant's Instruction Manual 5520.5f(4c) CGIS Agents are required to provide "fair and impartial investigative products" and CGIS Special Agents are prohibited from offering "recommendations or opinions in matters of guilt, innocence or punishment". In this case as a result of Woods rogue tactics while interviewing Federal witnesses, Agent Woods poisoned and manipulated witnesses before the trial started. In pending **EXHIBIT 10056-CGIS Agent Aaron Woods Witness Tampering and Misconduct Compilation** Agent Aaron Woods is clearly caught on tape actually selling his case to witnesses that would be testifying against the Bylers in a Federal Trial. Agent Woods told Harbor Officials that Darren Byler was guilty of this crime, embellished and exaggerated certain events and downright lied regarding details and evidence collected in this case. Agent Woods told several witnesses that "[Byler] ...causes trouble everywhere he goes" and he even stooped so low as to call Darren and Kimberly Byler childish name such as "bush leaguers" and "chuckleheads". Pending **EXHIBIT 10056-CGIS Agent Aaron Woods Witness Tampering and Misconduct Compilation** clearly proves this investigation by Agent Woods was nowhere near a "fair

and impartial" investigative product.  In fact, this outrageous depiction of Woods' investigative tactics, should be considered as witness tampering.

Agent Aaron W. Woods knowingly, willfully, and intentionally charged an innocent citizen, Kimberly Riedel-Byler, with a Federal felony while knowing full well the allegations were false.  On January 20, 2015 Agent Woods conducted an Interview and for the first time in this case spoke with Long Island Boarding Officer Trevor Fuller.  In the recorded interview provided in Pending **EXHIBIT 10052 LI Boarding team** Audio Clip it is obvious that this young boarding officer mistakenly thought that I was the Master of the vessel and not Kimberly.  MK3 Fuller referred three different times in the interview regarding questions about the Master as "He".  This fact as "He" even showed up in Agent Woods own Action Report of 1-25-2015 on the third page of **EXHIBIT 5 Charging Documents from Woods** as even Woods referred to the Master as "He".

From the recorded interview with Fuller while at sea on the Cutter Long Island and the Action Report of **EXHIBIT 5 Charging Documents from Woods** there should be no doubt by this Court that Agent Woods knew for a fact that Plaintiff Darren Byler was the one that made the statements, and not Kimberly, even though the statements were exaggerated and taken out of context by Fuller regarding off-loading to the shore side facility.

This was yet another pre-planned fraudulent event perpetrated by Federal Agent Aaron Woods, designed to hurt the Bylers.  In **EXHIBIT 5 Charging Documents from Woods** the December 5, 2014 Search Warrant Application was drafted 46 days before Agent Woods even interviewed Boarding Officer Trevor Fuller regarding the details that came directly from the "horse's mouth" regarding what was

actually said during the Long Island Boarding.  On Page 9 Number 18 of the Search Warrant Application Agent Woods falsely and fraudulently claimed the Boarding Officer stated that Kimberly had made these statements and on Page 2 of **EXHIBIT 5 Charging Documents from Woods** under Count 2 of the Charging Documents of this case, Kimberly was once again falsely and fraudulently accused of making these statements.

Even if this Court feels gracious enough to give Agent Woods the benefit of the doubt that these false charges against Kimberly Byler came out of thin air and that Woods was not involved in this, this Court should still consider these actions fraud and a travesty of justice after the Trevor Fuller Interview of January 20, 2015 and the facts came out on what was really said and by whom.   The bogus charges against Kimberly Byler were not dropped and stayed on the charging documents and she was falsely indicted by this Government and dragged into a Federal Trial in December 2015.  Agent Woods' actions were beyond outrageous and were a sneaky, deliberate deception that constituted a flagrant disregard for the truth.

The young boarding officer Trevor Fuller was additionally contacted by Agent Woods before the trial and manipulated by Woods to completely change his story that was directly contradicted by his first contact interview by Agent Woods in the audio tape provided in the **EXHIBIT 10052 LI Boarding team**.  As **EXHIBIT 10056-CGIS Agent Aaron Woods Witness Tampering and Misconduct Compilation** Witness Tampering Montage Audio Clips clearly prove Agent Woods has a history of manipulating witnesses.  It should be no mystery why Trevor Fuller testified at trial that Kimberly Byler made those statements after being in contact with Agent Woods.  There is no other way to explain this as the audio tape of **EXHIBIT 10052 LI Boarding team** speaks for itself.

The Prosecutor in the 2021 Evidentiary Hearing fought vigorously to keep Agent Woods' personnel file from being reviewed in that hearing and after the Court ruled on this exact issue that Agent Woods would have to disclose his personnel file, Woods' file was never disclosed. Upon protesting to the Prosecution, Plaintiff was told "nothing at all" including not one "complaint" was in this Federal Agents personnel file.

One of two events took place in this case by not producing Agent Woods' personnel file and either scenario is illegal by Federal Statute and should be considered inexcusable by this Court. The first scenario is that Agent Woods is such an upstanding Federal Agent he has never been involved in any questionably illegal activities or misconduct issues so he would have never had a complaint filed against him that would end up in his personnel file. Or the second and the most likely scenario is that this corrupt agent has been committing fraud for years while being protected by the Federal Government by keeping legitimate complaints out of his personnel file. It is likely the actions of Agent Woods' supervisors and certain prosecutors at the DOJ have emboldened this agent to continue to commit fraud in other federal cases with no adverse ramifications.

In **EXHIBIT 1 10-2-2016 Letter to USCG Randall Thompson**, Mr Byler documented that he filed an 11-Point Formal Complaint against Federal Agent Aaron Woods on October 2, 2016 to his boss Randall Thompson at CGIS Headquarters, regarding several serious felony allegations that Woods perpetrated upon him. This included detailed events of: Evidence tampering, false testimony to a Grand Jury, Witness Tampering, secretly recording conversations with Byler and his Doctor at the emergency room after Woods's partners at the Kodiak Police Department roughed him up on arrest to the point he needed

an ambulance ride to the ER; squandering $30,000.00 of taxpayer money to fly him to Anchorage, Alaska on a C130 Hercules just for Mr. Byler for a non-violent alleged crime when Kimberly Byler was allowed to take a commercial jet flight for her arraignment while being charged with the exact same crime; and flying over their remote cabin on West Kodiak Island in Coast Guard Helicopters at low altitude several times to harass the Byler Family of three and farm animals before the trial started.

Unlike what Agent Woods testified to under oath, CGIS Supervisors did not investigate any of the serious felony complaints against Woods because a forensic examination of Woods' camera card alone would have proved that the photos provided to Mr. Byler's original defense attorney, and the prosecution in this case under the guise and false claims that the photos were the originals, are completely false.  We now know for a fact the photos produced for the Federal Criminal Trial in discovery are not the originals as they have been "carved" which is not consistent with original file download from a camera card.

It makes no sense that a CGIS Supervisor(s) would not respond to Mr. Byler's complaints and refuse to follow-up on such serious accusations.  To this date, not once has my client received contact from Agent Thompson regarding his serious complaints against USCG CGIS Agent Aaron W. Woods.  This directly contradicts Woods' testimony.

In **EXHIBIT 6 4-4-2016 Letter to FBI** the exact same thing happened once again with Mr. Byler's FBI Complaint that he filed with the Anchorage, Alaska Office of the FBI in 2016, which were the partners of Agent Woods in the December 2014 boat raid.  Again, not one response to Mr. Byler's serious felony complaints against Woods.  It would appear that the inaction by CGIS regarding Mr. Byler's complaints

would be a violation utilizing "professional courtesy", as their inaction to investigate such serious complaints is outrageous.

As **EXHIBIT 2 3-20-2017 Email to AUSA Kyle Reardon** documents by March of 2017, Mr. Byler was so frustrated and upset that a Federal Agent such as Aaron Woods could get away with this much criminal fraud in his case, that on March 20 between attorney representation, Mr. Byler wrote a letter to Prosecutor Kyle Reardon himself, outlining in detail all the fraud that had been used against the Bylers in this case. In this letter Mr. Byler requested of AUSA Reardon to preserve all evidence.

As to the actions of everyone in the government to whom Mr. Byler complained regarding Agent Woods misconduct and corruption issues in this case, it would appear these actions by the government are in direct violation of the Giglio Policy in which the Supreme Court extended prosecutors' obligations under Giglio and Brady to disclose impeachment evidence as well as all other evidence that could be used to impeach a prosecution witness, which includes law enforcement officers such as Agent Woods. Giglio also covers acts of misconduct of a prosecution witness like Agent Woods, Mr. Byler has documented in detail on page 5 of **EXHIBIT 1 10-2-2016 Letter to USCG Randall Thompson** of how the details of his complaint qualify under the Federal USAM 9-5.100 (Giglio Policy) and should have been made available to other entities in the legal system, including a personnel file. Mr. Byler's many complaints of Fraud and Misconduct Issues should have legally shown up in Agent Woods personnel file and have been disclosed under Giglio and Brady to every defense attorney that Agent Woods has testified against their clients since his 2015 Federal Trial. This includes Agent Woods' star witness testimony in the Wells Murder do-over case. This information was intentionally withheld by the DOJ as

Well's attorney never had knowledge of  Mr. Byler's serious felony complaints against Agent Woods. This would also be true regarding every other Federal Case that Woods has testified in since 2015.

Just as in the many cases in the past that defense attorneys have been duped by the government covering for Woods while claiming he has a clean personnel file, Mr. Byler was also duped before his trial while the government claimed that Agent Woods had a clean record and there was nothing in his personnel file while refusing to disclose it to his defense team.  We now know these statements by the government regarding Woods' file before his trial to be categorically false and this subject was adamantly lied about in the 2021 Evidentiary Hearing.  Agent Woods had many complaints of fraud and misconduct issues that were filed against him in the past, yet were hidden from his personnel file.

For example, Coast Guard Commander Benjamin Strickland filed a formal complaint against Woods in 2014, before Mr. Byler's case started, for engaging in fraud, abuse of authority, misconduct and falsifying action reports.  Coast Guard Petty Officer Cody West also filed a complaint against Agent Woods for falsifying an Action Report.  Coast Guard personnel Amanda Pritchard filed a formal complaint against Woods for unjustly threatening her Coast Guard career and accused Woods of inappropriate conduct.  Coast Guard Captain Mark Cawthorn filed a formal complaint against Woods for misconduct and "increasingly irregular behavior".  Kodiak Citizen, Teresa Poulas filed a complaint against Woods for being sexually groped on her breasts and inner thighs during one of Woods boat raids.  Agent Woods's behavior has been so outrageous in the past that retired Federal (USAL) Judge London Steverson actually wrote a book about the corrupt ways of Agent Aaron Woods and publicly branded Agent Aaron Woods in his book a corrupt cyber-terrorist.  See **EXHIBIT 36  Save Our Heroes Woods branded a Cyber Terrorist by Ret USALJ Judge Steverson**

thus, it is quite clear that Agent Aaron W. Woods should not and did have a "clean Personnel File".

During this process, we can now prove Agent Woods knowingly and willingly charged an innocent citizen such as Kimberly Riedel-Byler, with a 1001 Felony Crime that he knew in advance that she did not commit and had a serious "recall" problem of most every major event in this case; has had many fraud and misconduct complaints against him by other credible individuals that have been obviously covered up by the Coast Guard and the Government; has been caught on tape illegally manipulating Federal Witnesses; has on many occasions abused his powers and has wasted hundreds of thousands of dollars of taxpayer money for his self-serving motives which includes an unprecedented $30,000.00 C130 Hercules ride just for Mr. Byler from Kodiak to Anchorage for his arraignment; and has illegally collected evidence to be used against the Bylers in a criminal investigation through subterfuge and the backdoor of Lt. Sara Lovette's MSD Office; has lied about not falsifying Action Reports; has lied on a Search Warrant Application; has lied to a Grand Jury regarding material issues; has lied in a Federal Trial regarding key sewage transfer issues; and most importantly, has told many material lies in the 2021 Evidentiary Hearing, attempting to cover his fraudulent tracks with the intent to falsely keep my client's felony conviction intact.  Just like (Ret.) Lt. Sarah Ann Lovette, Agent Aaron Woods should have zero credibility with this Court at this point.


## SUMMARY OF KIMBERLY RIEDEL-BYLER'S TESTIMONY


Kimberly Byler testified that she was not owner or co-owner of Plaintiff's vessel, the Wild Alaskan in 2014.  As the Government's Exhibit W **EXHIBIT 71 US Certificate of Documentation Wild Alaskan OSRV Owner** clearly states through a Certificate of Documentation from the National Vessel

Documentation Center, the Wild Alaskan was solely owned by Oil Spill Response Vessels, LLC which was comprised of one member, Darren Byler. Also, in **Exhibit 70 Wild Alaskan Abstract of Ownership from USCG**, a Department of Homeland Security US Coast Guard Abstract of Title proving the exact same thing that Mr. Byler was sole owner of the vessel at the time of the Entertainment Charter. Prosecutor Tran stated in the Evidentiary Hearing that Byler's company Oil Spill Response Vessels, LLC owned the then Shaman (later, Wild Alaskan) back in the 1970's or the vessel was co-owned by Darren Byler and his wife. Any such documents would have to be a complete fabrication as Mr. Byler did not incorporate this business until 2008 and in 2014 the Coast Guard Documentation Center listed Darren Byler as the sole owner of the Wild Alaskan.

For the Government to now try and falsely claim in previous documents that the vessel was jointly owned by Darren and Kimberly Byler, should be highly scrutinized by this Court. In fact, Agent Woods also falsely claimed to the Grand Jury Search Warrant Application and Charging Documents that Kimberly Byler co-owned the vessel. This farce continued in a significant amount of newspaper articles that have been written over the years.

***

Plaintiff hereby demands trial, prays to be made whole by an award of actual damages to be determined at trial, punitive damages to be determined at trial, and any and all further relief the court deems just and mete.

Respectfully submitted,

*/s/ Michael E. Bierman*

Michael E. Bierman

Attorney for Plaintiff

4107 W Pte Dr. NW

Kennesaw, GA 30152

(470) 774-0525

michaelebiermanesq@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on 12.13.23, a copy of the foregoing **(1). COMPLAINT FOR DAMAGES** was electronically filed and summons shall be issued.

Michael E. Bierman

/s/ Michael E. Bierman

**EXHIBIT LIST**

EXHIBIT 00:  Plaintiff's receipt for purchase of the Honda Sewage Pump

EXHIBIT 01:  10-2-2016 Letter to USCG Randall Thompson

EXHIBIT 02:  03-20-2017 Email to AUSA Kyle Reardon

EXHIBIT 03:  P67 Woods testimony Evidentiary Hearing – Pump in the fiddley

EXHIBIT 04:  P179 Woods testimony Evidentiary Hearing – Never tampered with Evidence

EXHIBIT 05:  Charging Documents from Woods

EXHIBIT 06:  04-04-2016 Letter to FBI

EXHIBIT 07:  P207, 55-56 Woods Testimony Evidentiary Hearing – Personnel File

EXHIBIT 10:  Action Report ACT-2014 10-006244

EXHIBIT 11:  10-29-2014  Lovette – Email to Kimberly

EXHIBIT 12:  06-30-2014  Lovette – Email to Kimberly

EXHIBIT 13:  Action Report ACT-2014-07-000741

EXHIBIT 14:  Action Report ACT-2014-07-000702

EXHIBIT 15:  P21 Commander Kenny – Evidentiary Hearing Testimony Transcript

EXHIBIT 16:  07-16-2014 Kenny Email – Long Island Boarding Summary

EXHIBIT 17:  P53 Lovette – 2015 Criminal Trial Testimony

EXHIBIT 18(b):  06-30-2014 – Lovette Email – Requesting crew list

EXHIBIT 19:  33 CFR Chapter 1

EXHIBIT 20:  P134 Evidentiary Hearing – Lovette testimony --Toilet Paper

EXHIBIT 21:  11-05-2014  Email to Cintron USCG

EXHIBIT 22:  03-19-2021 Email to City RE Harbormaster Job by Lovette

EXHIBIT 23: Lovette 2015 Facebook Posts

EXHIBIT 36:  Save Our Heroes Woods branded a Cyber Terrorist by Ret USALJ Judge Steverson

EXHIBIT 51:  07-01-2014 Woods Email to Lovette

EXHIBIT 52: 11-5-2014 Email to Cintron

EXHIBIT 53: Action Report ACT-2014-08-001567

EXHIBIT 54:  Audio Transcript of Woods/Lovette/Byler Meeting 01-05-2015

EXHIBIT 55:  P136-137 Lovette Evid Testimony Denying 01-05-2015  Woods-Lovette-Byler meeting.

EXHIBIT 62:  ABC Attempted Undercover Sting by CGIS Woods-ABC-KPD-FBI-AST

EXHIBIT 68:  CFR Subpart 25.50 Garbage Retention

EXHIBIT 69:  Title 33 Part 6 Protection and Security of Vessels, Harbors and Waterfront Facilities

EXHIBIT 70:  Wild Alaskan Abstract of Ownership from USCG

EXHIBIT 71:  US Certificate of Documentation Wild Alaskan OSRV Owner

EXHIBIT DE-0044 GREEN AND BLUE SEWAGE PUMP HOSES

EXHIBIT DE-0044BIG GREEN AND BLUE SEWAGE PUMP HOSES

EXHIBIT DE-0116 byler opens fiddley door, no locks

EXHIBIT DE-0129 Red Honda sewage pump in the fiddley

EXHIBIT Z001 -- RED HONDA SEWAGE PUMP RECEIPT 4-30-2014

EXHIBIT Z002 -- INTERIOR FIDDLEY DOOR HAS NO LOCKING MECHANISM

EXHIBIT Z003 interior fiddley, no interior door

EXHIBIT Z004 -- FIDDLEY DOOR EXTERIOR CANNOT LOCK

EXHIBIT Z005 ltr to USCG tampered evidence

ADDITIONAL EVIDENCE TO BE FILED CONVENTIONALLY
PURSUANT TO PENDING
MOTION FOR LEAVE TO FILE EXHIBIT CONVENTIONALLY:

**<u>EXHIBIT</u>**
VIDEOTAPE (1):

HONDA TRASH PUMP DEMONSTRATING  SEWAGE TRANSFER PROCEDURE
FROM M/V WILD ALASKAN 3,500 GALLON SEWAGE TANK
TO LANDING CRAFT GULF COAST RESPONDER.

ADDITIONAL EVIDENCE TO BE FILED CONVENTIONALLY
PURSUANT TO PENDING
MOTION FOR LEAVE TO FILE EXHIBIT CONVENTIONALLY:


**<u>EXHIBIT</u>**
VIDEOTAPE (2):

KODIAK HARBORMASTER LON WHITE EYEWITNESS STATEMENT #1 TO WOODS OF
PLAINTIFF'S SOLELY LEGAL SEWAGE OFFLOADING.

ADDITIONAL EVIDENCE TO BE FILED CONVENTIONALLY
PURSUANT TO PENDING
MOTION FOR LEAVE TO FILE EXHIBIT CONVENTIONALLY:

**EXHIBIT**
VIDEOTAPE (3):

KODIAK HARBORMASTER LON WHITE EYEWITNESS STATEMENT #2 TO WOODS OF
PLAINTIFF'S SOLELY LEGAL SEWAGE OFFLOADING.

ADDITIONAL EVIDENCE TO BE FILED CONVENTIONALLY
PURSUANT TO PENDING
MOTION FOR LEAVE TO FILE EXHIBIT CONVENTIONALLY:

EXHIBIT 10051:  Sara Lovette – ABC hearing – Anonymous Overloaded Water Taxi
EXHIBIT 10052:  LI Boarding team
EXHIBIT 10053:  Lovette2
EXHIBIT 10056:  CGIS Agent Aaron Woods Witness tampering and Misconduct Compilation